UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MICHAEL A AMEN** and
**CHERYLL K AMEN**,

Debtors.

Case No. **12-61225-7**

## MEMORANDUM of DECISION

At Butte in said District this 2nd day of June, 2015.

In this Chapter 7 bankruptcy, after due notice, a hearing was held April 28, 2015, in Billings on approval of the First and Final Application for Professional Fees and Costs ("Application") filed by the Chapter 7 Trustee, Joseph V. Womack ("Trustee"), together with Creditor Bar Nothing Ranch Partnership's ("Bar Nothing") Objection to First and Final Application for Professional Fees and Costs filed March 10, 2015. The Trustee appeared at the hearing personally and with counsel, Trent M. Gardner of Bozeman, Montana; Bar Nothing was represented at the hearing by W. Scott Green and James A. Patten of Billings, Montana. The Trustee and Craig Martinson testified; the Trustee's Exhibits 1, 2, 10, 12 and 15 were admitted into evidence. Pursuant to an Order entered April 22, 2015, the Court took judicial notice of the entire docket in Adversary Proceeding No. 13-00034, including all documents, evidence and testimony received therein; a Motion for Approval of Compromise Settlement, Including

Approval of Sale Free and Clear (Doc. 112); the Limited Objection to Motion for Approval of Compromise Settlement Including Approval of Sale Free and Clear (Doc. 113); a Motion for Approval of Compromise Settlement (Doc. 188); a Motion for Approval of Compromise Settlement (Doc. 186); Order (Doc. 195); Order (Doc. 196); a Motion for Approval of Compromise Settlement (Doc. 236); Order (Doc. 237); the First and Final Application for Professional Fees and Costs (Doc. 239); the Application for Appointment of Attorneys for Trustee (Doc. 88); the Amended Schedule F (Doc. 234-1); Debtor's Schedules (Doc. 14); Debtor's Amended Schedules (Doc. 20-1); and Order, March 4, 2013 (Doc. 94). The Trustee and Bar Nothing have filed post-hearing briefs and the matter is ready for decision.

## BACKGROUND

Debtors commenced this case under chapter 13 of the Bankruptcy Code on July 27, 2012. Debtors case was converted to chapter 7 of the Bankruptcy Code on October 5, 2012, and Trustee was appointed that same date. On November 30, 2012, the Trustee sought and obtained approval to employ himself as attorney for the Bankruptcy Estate on an hourly basis. On March 4, 2013, the Trustee sought to employ Goetz, Baldwin & Geddes, P.C. ("the Goetz Law Firm") and the Trustee's law firm, Waller & Womack, P.C., as co-counsel on a 40% contingency basis to pursue various adversarial and contested claims that the Debtors had identified in their schedules as well as other claims that have been and may be identified by the Trustee, including specifically "[l]iquidation of Debtors' interest in Lowe/Amen LLC or breach of the Lease Agreement between Lowe/Amen LLC and Debtor Michael Amen." The Order approving the Goetz Law Firm and Waller & Womack's employment entered March 4, 2013, specifically references the Trustee's desire to employ the Goetz Law Firm and Waller &

Womack on a contingency fee basis, plus reasonable costs and expenses, and grants the Trustee's employment of the Goetz Law Firm and Waller & Womack "under the terms set forth in the Application," and further provides that "[a]ll compensation awarded and paid to said professional shall be subject to Court approval after performance and proper application."

One of the assets listed by the Debtors in their scheduled filed August 21, 2012, was Debtor Mike Amen's 50% interest in Lowe/Amen, LLC, a Montana limited liability company, in which Debtors assigned a value of $450,000. The other member of Lowe/Amen, LLC was Lowe Property Holdings, LLC. Dan Lowe was the managing member of Lowe Property Holdings, LLC. Lowe/Amen, LLC owned two parcels of real property; one consisting of approximately 24 acres and the other consisting of approximately 40 acres.

Dan Lowe testified at the trial in related Adversary Proceeding No. 13-00034, that as of 2010, Michael Amen was not paying his share of the annual payments to Lowe/Amen, LLC and that as a result, "there was a shifting of shares" that caused Dan Lowe to have a larger percentage of ownership than Amen in Lowe/Amen, LLC. This "shifting of shares" was not reflected in Lowe/Amen, LLC's 2008, 2009 or 2010 income tax returns, which all showed Michael Amen and Lowe Property Holdings as each having a 50% interest in Lowe/Amen, LLC's "beginning" and "ending" profits, losses and capital. However, Lowe/Amen, LLC's 2011 U.S. Return of Partnership Income shows Lowe Property Holdings as having a 62% share and Mike Amen as having a 38% share in the beginning profits, loses and capital of Lowe/Amen, LLC, and an ending interest of 71% and 29% respectively. The Trustee testified at the April 28, 2015, hearing that Dan Lowe had maintained that Mike Amen's ownership interest had been diluted to 17% by Debtors' petition date.

In 2010, prior to Debtors' bankruptcy, Mike Amen owed money to Bar Nothing and Lazy JC Ranch, LLC. In part to avoid litigation over the collection of those personal debts, Mike Amen granted to Bar Nothing, without the knowledge, consent or authorization of Lowe/Amen, LLC or Lowe Property Holdings, a security interest in Lowe/Amen, LLC's smaller parcel of land, and granted Lazy JC Ranch, LLC, without the knowledge, consent or authorization of Lowe/Amen, LLC or Lowe Property Holdings, a security interest in Lowe/Amen, LLC's larger parcel of land. Mike Amen also granted Lazy JC Ranch, LLC a security interest in "all of Debtor's right, title and interest as a member of Lowe/Amen, LLC," which security interest was perfected pursuant to a UCC Financing Statement filed June 30, 2010. Shortly after learning of the unauthorized liens against Lowe/Amen, LLC's property, Dan Lowe caused Lowe/Amen, LLC, on July 18, 2012, to commence a lawsuit against Bar Nothing in the Thirteenth Judicial District Court of Montana, Cause No. DV-12-0868. Lowe/Amen, LLC commenced that action in an effort to, *inter alia*, quiet title with respect to Bar Nothing's alleged unauthorized lien and to invalidate its unauthorized security interest against Lowe/Amen, LLC's 24 acre parcel of real property.

After Debtors filed bankruptcy, Lowe/Amen, LLC and Lowe Property Holdings, LLC filed Proof of Claim Nos. 18 and 19 on February 22, 2013, each asserting an unsecured claim against Debtors in the amount of $395,761.80, stemming from damages suffered as a result of the unauthorized security interests Mike Amen granted to Bar Nothing and Lazy JC Ranch, LLC. Bar Nothing filed Proof of Claim No. 8 on September 10, 2012, asserting a secured claim in the amount of $247,406.94. Lazy JC Ranch, LLC filed Proof of Claim No. 20 on February 28, 2013, asserting a secured claim in the amount of $83,761.72.

On or about March 5, 2013, the Trustee received a broker's opinion that the value of Lowe/Amen, LLC's property was $1,053,280. On October 1, 2013, the Trustee entered into a settlement with Lowe Property Holdings, LLC, Lowe/Amen, LLC, and Lazy JC Ranch, LLC resolving Lowe/Amen, LLC's Proof of Claim No. 18, Lowe Property Holdings, LLC's Proof of Claim No. 19, and Lazy JC Ranch, LLC's Proof of Claim No. 20. Pursuant to the settlement,

    a.    Womack transferred Debtor Michael Amen's membership interest in Lowe/Amen, LLC to Lowe Property Holdings, LLC free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363(b) and (f);

    b.    Lowe/Amen, LLC transferred the 24 acre parcel to the Trustee free and clear of the FIB Mortgage, but subject to Bar Nothing's claimed Trust Indenture;

    c.    Lowe/Amen, LLC transferred to the Trustee all claims, rights and defenses against Bar Nothing related to the Bar Nothing Trust Indenture, and

    d.    Lazy JC Ranch agreed to accept a $50,000 claim secured by a second priority lien on the 24 Acre Parcel and any proceeds of the sale of the 24 Acre Parcel, subordinate only to any allowed secured claim or lien of Bar Nothing, and a $21,047 unsecured claim in full settlement of its Proof of Claim No. 20.

On November 15, 2013, the Court entered an Order approving the settlement agreement and release with Lowe/Amen, LLC, Lowe Property Holdings, LLC and Lazy JC Ranch, LLC. In that same Order, the Court authorized the Trustee to execute such agreements and instruments required to effect settlement under the settlement agreement and release without further proceedings and provided that the transfer of Debtors' membership in Lowe/Amen, LLC to Lowe/Amen, LLC, as contemplated in the approved settlement agreement and release, was free

and clear pursuant to 11 U.S.C. § 363(f). That decision is final and nonappealable.

Prior to the aforementioned settlement, the Trustee and Lowe/Amen, LLC had commenced Adversary Proceeding No. 13-00034 against Bar Nothing on September 11, 2013, requesting various relief, including a request that the Court set aside the security interest Bar Nothing held against Lowe/Amen, LLC's real property. Following a trial, the Court, on January 20, 2015, entered Judgment in favor of the Trustee and against Bar Nothing, directing that the Montana Trust Indenture between Lowe/Amen, LLC and Bar Nothing Ranch Partnership be removed from the Yellowstone County records and otherwise held cancelled, void, unenforceable and of no effect. The Court also sustained the Trustee's Objection to Bar Nothing's Proof of Claim No. 8, allowing Proof of Claim No. 8 as a general unsecured, nonpriority claim in the amount of $247,406.94. In an Order entered February 6, 2015, the Court, upon Bar Nothing's request, stayed all matters in the Adversary Proceeding through February 6, 2015, pending approval of a Compromise Settlement between the Trustee and Bar Nothing filed in Debtors' main bankruptcy case on February 6, 2015. That Compromise Settlement was approved on February 24, 2015, and provides:

    a.    Bar Nothing waives and relinquishes any claim to be a secured creditor and waives any claim to a secured interest in the proceeds of the sale of the subject real property;

    b.    Bar Nothing agrees that the Bar Nothing POC (Claim Docket #8) shall be allowed as a general unsecured, nonpriority claim in the amount of $220,000 (the "Amended Bar Nothing POC");

    c.    Trustee waives the right to claim attorneys' fees in the Bar Nothing AP and his

        motion for reconsideration (Doc. 120) shall be deemed withdrawn upon approval of this Settlement Agreement;

    d.    Bar Nothing and Trustee agree that costs shall be taxed against Bar Nothing in the Bar Nothing AP in the amount of $2,437.55 and such amount shall be deducted from the Amended Bar Nothing POC prior to any payment to Bar Nothing for such proof of claim;

    e.    Bar Nothing and Trustee shall dismiss with prejudice the Bar Nothing AP; and

    f.    Bar Nothing and Trustee will fully release all claims against the other parties (other than Bar Nothing's right to payment on the Amended Bar Nothing POC and Trustee's right to reimbursement of costs).

    The Trustee filed the instant Application on March 4, 2015, seeking approval of a final award of total attorney fees in the amount of $149,280.00 and total costs in the amount of $9,330.31 to co-counsel the Goetz Law Firm and Waller & Womack. The fees and costs are being split per the terms of employment with $111,960.00 (30% contingency fee) to Goetz Law Firm and $37,320.00 (10% contingency fee) to Waller & Womack and costs in the amount of $7,686.31 to the Goetz Law Firm and amount costs in the amount of $1,644.00 to Waller & Womack, for services rendered and costs incurred from March 4, 2013 through March 2, 2015.

    The Trustee states in the Application that following approval of the October 1, 2013, Settlement Agreement and Release with Lowe/Amen, LLC, Lowe Property Holdings, LLC and Lazy JC Ranch, LLC, he sold the 24 acre parcel of real property for $403,200. The Trustee, in the pending Application, seeks, in part, a contingency fee award in the amount $141,280 relating to the 24 acre parcel, explaining that "[t]he contingency fee is based on 40% of the new

amount recovered after deducting the allowed Lazy JC secured claim ($403,200 - $50,000 = $353,200 x .40 = $141,280)." Bar Nothing filed an objection to that portion of the Application relating to liquidation of Mike Amen's interest in Lowe/Amen, LLC, arguing "[t]here was no need for the Trustee to incur fees to collect the property of the estate. No litigation was incurred and no litigation costs were at risk. The Tax Returns set out the interests. The fee charged for the service provided is prejudicial to the interests of the unsecured creditors of the Bankruptcy Estate." The evidence presented at the April 28, 2015, hearing in Billings addressed such argument. Counsel for Bar Nothing also made the argument at hearing that the Trustee waived his right to claim attorney's fees per the agreement with Bar Nothing filed February 6, 2015, and approved February 24, 2015. Bar Nothing raised additional arguments in its post-hearing brief. For instance, Bar Nothing argues in its post-hearing brief that it was improper for the Trustee to employee his own law firm as counsel for the Bankruptcy Estate.[1] Arguments that were not raised in either the objection or at the hearing, but were raised for the first time in a post-hearing brief, will not be considered by the Court.

## APPLICABLE LAW

Each application for compensation filed in this Court is reviewed to evaluate the propriety of the compensation requested. *Boone v. Derham-Burk (In re Eliapo)*, 298 B.R. 392, 402 (9th Cir. BAP 2003 (*Eliapo I*), rev'd in part on other grounds, 468 F.3d 592 (9th Cir. 2006); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987). In *Busy Beaver*, the court explained:

---

[1] It bears noting that such employment is contemplated and permitted under 11 U.S.C. § 328(b).

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Extensive case law has developed regarding the amount and type of information that applicants must include in their fee applications. The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:
>
>> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The Trustee seeks approval of a contingency award in the total amount of $149,280.00 plus costs in the amount of $9,330.31. Compensation based upon a contingency fee is contemplated and authorized under the Bankruptcy Code. 11 U.S.C. § 328(a). This Court has previously recognized the use of alternative methods of calculating fees in *In re Foodservice Equipment, Inc.*, 14 Mont. B.R. 512, 513 (Bankr. D. Mont. 1995):

> The "lodestar" method, multiplying a reasonable number of hours by a reasonable hourly rate, is the primary but not exclusive method of calculating fees. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (Puget Sound)*, 924 F.2d 955, 960 (9th Cir. 1991). In *Puget Sound*, the Ninth Circuit affirmed an award based on an alternative formula based on a percentage of what the applicant recovered for the estate instead of the "lodestar" method. *Id.* at 961.

*In re Amsden*, 10 Mont. B.R. 309, 313 (1992).

> Therefore, this Court approves the use of contingency fee awards to attorneys in bankruptcy cases if the employment and fee arrangements are properly disclosed and approved. In the instant case Applicant's contingency fee arrangement was disclosed and approved, and shall form the basis of Applicant's compensation.

DISCUSSION

The Trustee's applications to employ the Goetz Law Firm and Waller & Womack (docket nos. 88 and 89) disclosed that they would be compensated by means of a 40 percent (40%) contingency fee for various things, including the "[l]iquidation of Debtors' interest in Lowe/Amen LLC or breach of the Lease Agreement between Lowe/Amen LLC and Debtor Michael Amen[.]" While Bar Nothing argues "[t]here was no need for the Trustee to incur fees to collect the property of the estate[,]" the record shows that before the Trustee could liquidate Mike Amen's interest in Lowe/Amen, LLC, he first had to determine Mike Amen's ownership interest in Lowe/Amen, LLC. Debtors listed that ownership interest as 50%, with a value of $450,000. Dan Lowe had a different opinion, claiming Mike Amen's ownership interest had

been diluted to 17% by Debtors' petition date. While the record contains no written documentation to that effect, the 2011 federal income tax return for Lowe/Amen, LLC shows that Mike Amen's ending share of profit, loss and capital was 29%.

Twenty-nine percent of Lowe/Amen, LLC's 64 acres of property would equate to 18.56 acres. The Trustee reached a settlement with Dan Lowe wherein Debtors' bankruptcy estate received 24 acres, free and clear of the lien held by First Interstate Bank; Lowe/Amen, LLC received the other 40 acres, with Dan Lowe also receiving Mike Amen's ownership interest in Lowe/Amen, LLC. The Trustee sold the 24 acres for $384,000, or $16,000 per acre. Assuming for purposes of this decision that the $16,000 per acre price was applied equally to the entire 64 acres once owned by Lowe/Amen, LLC, and if Mike Amen had received 29% of Lowe/Amen, LLC's total assets, as reflected in the 2011 federal income tax return, the Bankruptcy Estate would have realized gross proceeds of $296,960 (18.56 acres multiplied by $16,000 per acre). from the sale of real property, rather than $384,000. The Bankruptcy Estate received at least a $87,040 benefit from the Trustee's agreement with Dan Lowe.

Next, the Trustee was successful, in Adversary Proceeding No. 13-00034, in removing Bar Nothing's entire secured claim of $247,406.94 from the 24 acres. The Trustee similarly negotiated a reduction in Lazy JC Ranch, LLC's secured claim against the 24 acres from $83,761.72 to $50,000. Hence, the 24 acre parcel, which sold for $384,000, and was originally subject to secured claims totaling $331,168.66, was sold for $384,000, subject only to a secured claim of $50,000. By this Court's calculation, the Trustee's efforts resulted in a benefit to the unsecured creditors of $281,168.66 ($331,168.66 less Lazy JC Ranch, LLC's remaining secured claim of $50,000).

As the above shows, the Trustee's efforts with respect to Mike Amen's interest in Lowe/Amen, LLC resulted in a benefit to the estate of at least $87,040 and $281,168.66, or $368,208.66. The Court thus rejects Bar Nothing's argument that "[t]here was no need for the Trustee to incur fees to collect the property of the estate[.]"

Turning to the matter at hand, the Trustee seeks, on behalf of the Goetz Law Firm and Waller & Womack, a fee of $141,280 for the liquidation of Mike Amen's interest in Lowe/Amen, LLC. Such fee is based upon a gross sales price of $403,200. An application for fees filed on behalf of the auction company recites that the highest bid was $384,000, and that the buyer paid a 5% buyer's premium of $19,200.[2] The Court is not persuaded that the Goetz Law Firm and Waller & Womack are entitled to a fee on the buyer's premium of $19,200; they are entitled to a fee on the highest bid of $384,000, less Lazy JC Ranch, LLC's $50,000 secured claim. Consequently, this Court concludes that the Goetz Law Firm and Waller & Womack are, based upon the Application as it was presented to the Court, entitled to a fee of $133,600 for the liquidation of Mike Amen's interest in Lowe/Amen, LLC; a reduction of $7,680.00.

Given the results achieved in this case, and with the one exception just discussed, the

---

[2] The application to employ the auctioneer filed January 27, 2014, at docket no. 147, discloses the employment terms as:

    I.    Fees: 5% of gross sale proceeds. This compensation includes all advertising costs. Musser Brothers Auctioneers will seek compensation by presenting the Court with an accounting of the sale proceeds.
    ii.   Buyer's Premium Musser Brother's will also collect a 5% buyer's premium on top of the final sales price from the winning bidders.

In the application for fees filed October 1, 2014, the Trustee calculated the Estate's portion of the fee as 5% of the bid amount of $384,000 plus the buyer's premium of $19,200, or 5% of $403,200. The Court would note that in that same application, the Trustee also sought approval of the buyer's premium as an expense of the Bankruptcy Estate.

Court finds that the services provided by the Goetz Law Firm and Waller & Womack in representing the Estate were reasonable and necessary in resolving the various issues presented by this complex case. The Court further finds that the requested contingency award is within the approved contingency fee award contemplated in the employment application, and the costs in the amount of $9,330.31 are actual, reasonable and necessary.

As a final note, Bar Nothing's counsel argued at the hearing that the Trustee waived any fee per the February 5, 2015, Settlement Agreement and Release between the Trustee and Bar Nothing. As set forth in that Settlement Agreement and Release, the Trustee was seeking an award of $98,962.78 in attorney's fees against Bar Nothing. The Settlement Agreement and Release provides, in part, that the Trustee waives the right to claim attorney's fees against Bar Nothing in Adversary Proceeding No. 13-00034, and that costs shall be taxed against Bar Nothing in Adversary Proceeding No. 13-00034 in the amount of $2,437.55. That Settlement Agreement and Release makes no reference to the Trustee's waiver of fees from the Bankruptcy Estate.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED the Trustee's First and Final Application for Professional Fees and Costs, filed on March 4, 2015 (Doc. 239) is approved; and Goetz, Baldwin, & Geddes and Waller & Womack, P.C. together are awarded reasonable professional fees in the total amount of $141,600.00 plus costs in the amount of $9,330.31, with the total amount split per the terms of employment, $106,200 to Goetz, Baldwin, & Geddes and $35,400.00 to Waller & Womack and

costs in the amount of $7,686.31 to Goetz, Baldwin, & Geddes and $1,644.00 to Waller & Womack.

BY THE COURT

*/s/ Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana